**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MACK TAYLOR,

        Plaintiff,

v.

OAKLAND COUNTY DEPUTY SHERIFF
POWELL, Badge 459, NURSE (JANE DOE)
BROWN and THE NORTH OAKLAND
MEDICAL CENTER, in their official capacities
and individually,

        Defendants.

_____/

Case No. 09-10199

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT POWELL'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Defendant Oakland County Sheriff Steven Powell's Motion for Summary Judgment under Federal Rule of Civil Procedure 56. (Doc. 16). Plaintiff Mack Taylor's complaint alleges Defendants' violated his state law and constitutional rights by drawing his blood without his consent after Powell arrested him for driving while intoxicated. (Doc. 1).[1] Plaintiff has premised liability on 42 U.S.C. § 1983, negligence, gross negligence, intentional infliction of emotional distress ("IIED"), and other state law intentional tort theories. (Doc. 1 at 4-9). Defendant Powell seeks summary judgement on Plaintiff's entire complaint. At the hearing on the motion, Plaintiff abandoned all state law claims, as well § 1983 claims based on alleged violations of procedural and substantive

---

[1] Defendant North Oakland Medical Center was dismissed with prejudice. (Doc. 11, 22).

due process.  The Court GRANTS summary judgment to Defendant Powell on those claims.  Only a § 1983 claim predicated on an alleged violation of the Fourth Amendment remains.

For the reasons that follow, the Court declines to apply the doctrine of collateral estoppel.  There are genuine issues of material fact on Plaintiff's Fourth Amendment § 1983 claim that preclude the affirmative defense of qualified immunity.  Accordingly, the Court DENIES Defendant's motion for summary judgment on this claim.

## II.  STATEMENT OF FACTS

On May 18, 2006, Plaintiff Mack Taylor drove his car away from a bar after drinking a beer.  (Doc. 21 at 2)  Shortly after leaving, Defendant Stephen Powell pulled Taylor over after observing the vehicle's erratic movements.  (Doc. 1 at 2).  The traffic stop resulted in a chemical breath test and a determination by Powell that Taylor was legally intoxicated.  (Doc. 21 at 3).  Defendant Powell arrested Taylor, and transported him to North Oakland Medical Center for a blood draw to determine his blood alcohol content.  (Doc. 21 at 3).  According to Taylor, no conversation occurred between him and Defendant Powell during the drive to the hospital.  (Doc. 21 at 3).  Upon arrival, he asked for a lawyer.  (Doc. 21 at 3).  Plaintiff testified that Defendant did not ask him to consent to a chemical blood test for alcohol, nor read him his rights about the testing procedures, nor explain the consequences of a refusal to consent.  (Doc. 21 at 3).  Defendant testified he did.  (Doc. 21 Ex. 3 at 91).  Defendant Powell handcuffed Taylor to a hospital bed and asked Defendant Nurse to draw his blood.  (Doc. 21 Ex.1 at 65-66).  Powell testified that Taylor gave nurse Brown permission to draw his blood.  (Doc. 21 Ex. 3 at 89).  Plaintiff Taylor renewed his request for a lawyer and requested an additional, non Breathalyser, blood alcohol test.  (Doc. 21

at 3). After the blood draw, Powell booked Taylor at the Oakland County jail and released eight hours later. (Doc. 21 at 3).

The State of Michigan charged Taylor with driving while intoxicated. He filed a motion to suppress the blood evidence in the criminal case. At the evidentiary hearing on the motion, his counsel stipulated that the only issue was whether he gave consent for the blood draw. (Doc. 21 at 4).

Plaintiff Taylor testified on the consent issue during the hearing. He stated that he was not given any documents to read at the hospital, nor asked to consent to the blood draw. (Doc. 21 at 5, Ex. 2 at 24-26). Plaintiff told Defendant Powell "if I was going to take any test I wanted my attorney present." (Doc. 21 at 5, Ex. 2 at 28). Taylor denies that he failed to express his refusal to have his blood drawn. (Doc. 21 at 5). When asked what he did to alert someone that he did not want to have his blood drawn, he answered, "Deputy Powell knew I wasn't comfortable with the whole situation from the jump." (Doc. 16 at 5, Ex. C at 29).

Defendant Powell testified at the same hearing. He testified that he discussed Taylor's chemical testing rights while the two sat in a parked squad car in the parking lot and that this was before they entered the hospital for the test. (Doc. 16 at 4, Ex. C at 13). Plaintiff testified Defendant Powell read something to him at the hospital. (Doc. 16 at 5, Ex. C at 24). However, in his deposition for this civil case, Defendant Powell testified he discussed chemical tests *while en route* to the hospital. (Doc. 21 at 6, Ex. 3 at 83-84). Powell testified Taylor did not refuse to take the test. (Doc. 16, Ex. C at 8-9). Defendant Powell confirmed Plaintiff asked for a second blood alcohol test while leaving the hospital. (Doc. 16 at 5, Ex. C at 10).

The state court denied Taylor's motion to suppress and ruled that ample testimony supported the finding that he consented to a warrantless blood draw. (Doc. 16 at 6, Ex. C at 36). The case never went to trial. It was dismissed without prejudice because Powell and Defendant Nurse Brown failed to appear as state witnesses. (Doc. 21 at 3). The case was subsequently re-filed and dismissed again, this time with prejudice, because the witnesses again failed to appear. (Doc. 21 at 3).

## III.   STANDARD OF REVIEW

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c)(2). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127

S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v.DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

## IV. ANALYSIS

Defendant Powell argues that Plaintiff Taylor is collaterally estopped from contesting his consent to the blood draw because the issue was previously litigated to a final determination at the state court evidentiary hearing. Alternatively, Powell argues Taylor consented to the blood draw pursuant to Michigan's implied consent statute, thus no violation of the Fourth Amendment, therefore no § 1983 claim. As an additional alternative argument, Powell contends he is entitled to the affirmative defense of qualified immunity.

### A. Collateral Estoppel

Defendant argues collateral estoppel applies because the issue of consent was previously litigated at the state court evidentiary hearing where the court found that Taylor consented to the blood draw. Powell contends Taylor had a "full and fair opportunity to litigate" the issue, notes he was represented by counsel, and the "state court considered and ruled on" the consent issue. In sum, Powell argues the elements of collateral estoppel exist regarding the issue of Plaintiff's consent to the blood draw.

5

Federal courts must apply state collateral estoppel[2] law when determining whether a state court's judicial determination has preclusive effect in a § 1983 action. Haring v. Prosise, 462 U.S. 306, 313 (1983); Darrah v. City of Oak Park, 255 F.3d 301, 311 (6th Cir. 2001). The party invoking collateral estoppel bears the burden of proving the doctrine applies. Central Transport, Inc. v. Four Phase Systems, Inc., 936 F.2d 256, 260 (6th Cir.1991). The doctrine of collateral estoppel is intended " 'to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication....' " Detroit v. Qualls, 454 N.W.2d 374, 382 n. 30, (Mich. 1990) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). Under Michigan law, "[a] court must apply issue preclusion when (1) the parties in both proceedings are the same or in privity, (2) there was a valid, final judgment in the first proceeding, (3) the same issue was actually litigated in the first proceeding, (4) that issue was necessary to the judgment, and (5) the party against whom preclusion is asserted (or its privy) had a full and fair opportunity to litigate the issue." United States v. Dominguez, 359 F.3d 839, 842 (6th Cir.2004) (citing People v. Gates, 452 N.W.2d 627, 630-31 (Mich. 1990)). Relatedly, "cross-over estoppel" exists "where an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa." Gates, 452 N.W.2d at 630. Under Michigan's collateral estoppel law, "[c]rossover estoppel ... is permissible." Barrow v. Pritchard, 597 N.W.2d 853, 856 (Mich. Ct. App. 1999).

Michigan courts have expanded upon the five factors set forth in Gates. Although the Gates opinion requires the parties to be the same or in privity, the Michigan Supreme

---

[2] The term "collateral estoppel" is synonymous with the "issue preclusion."

Court recently rejected the mutuality requirement for defensive use of collateral estoppel. Monat v. State Farm Ins. Co., 677 N.W.2d 843, 852 (Mich. 2004). Additionally, the court acknowledged Michigan's collateral estoppel law has rejected the mutuality requirement in the "cross-over" context, i.e., criminal to civil. Id. at 850 (citing Knoblauch v. Kenyon, 415 N.W.2d 286 (Mich. Ct. App. 1987).

Elaborating on the "full and fair" requirement, the Monat court instructed that, in deciding whether to apply the doctrine, a court should look to the factors set forth in §§ 28-29 of the Restatement (Second) of Judgments. Id. at 847 n. 2. The court explained that "[t]he general rule permits relitigation when '[t]he party against whom preclusion is sought could not, *as a matter of law*, have obtained review of the judgment in the initial action....' " Id. at 847 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28(1)) (italics in original). The court remarked that a " 'full and fair opportunity to litigate' normally encompasses the opportunity to both litigate and appeal...." Id.

In accord with Monat, the Michigan Court of Appeals recently explained that a decision is a "final judgment" for collateral estoppel purposes "when all appeals have been exhausted or when the time available for an appeal has passed." Leahy v. Orion Tp. 711 N.W.2d 438, 441 (Mich. Ct. App. 2006); see also, Gursten v. Kenney, 134 N.W.2d 764, 766 (Mich. 1965). With respect to the "necessary for judgment" factor, the courts have held "[t]o be necessarily determined in the first action, the issue must have been essential to the resulting judgment; a finding upon which the judgment did not depend cannot support collateral estoppel." Bd. of Cnty. Rd. Comm'rs. for the Cnty. of Eaton v Schultz, 521 N.W.2d 847, 850 (Mich. Ct. App. 1994) (citing Qualls, 454 N.W.2d at 382). Furthermore, collateral estoppel will apply to an issue only if it is a basis of the former judgment and is

"clearly, definitely, and unequivocally ascertained." Ditmore v. Michalik, 625 N.W.2d 462, 467 (Mich. Ct. App. 2001).

Two of the five elements, "privity" and "same issue," are not in contention, thus favoring the use of the doctrine. The Michigan Supreme Court has rejected the mutuality requirement for the defensive use of collateral estoppel. Monat, 677 N.W.2d at 852. The fact that Powell was not a party in the prior state court proceeding is no bar to collateral estoppel here. Additionally, the same issue, whether Taylor gave consent, is being litigated in this Court. However, as explained below, Defendant does not carry the burden on the remaining elements.

Turning to the "final judgment" element, Defendant's argument necessarily implies that the ruling on the consent issue at the evidentiary hearing qualifies as a "final judgment." The "final judgment" in the matter was the dismissal of criminal charges. The dismissal prevents practical review of the pretrial determination by an appellate court, and thus the consent ruling cannot acquire "final judgment" status. See, Leahy v. Orion Tp., 711 N.W.2d at 441. To hold otherwise would create a policy where when one party has an unfavorable pretrial ruling, but is ultimately successful in the underlying case, that party is pressured into appealing the pretrial ruling to escape preclusive effect in a future case. The Michigan courts have explained such a policy is "ill-advised" and "one that is inconsistent with the doctrines of both res judicata and collateral estoppel." Schultz, 521 N.W.2d at 851. Furthermore, "[r]equiring the prevailing party to appeal unfavorable rulings would foster excessive litigation, vexation, and waste judicial resources...." Id. Here, Taylor received an unfavorable ruling on the consent issue in his criminal case, but since he ultimately prevailed, had no incentive and no obligation to appeal that court's decision on the consent

issue. Unless, of course, issue preclusion law requires him to do so. After review, the Court finds that Michigan's preclusion law does not.

Since the "final judgment" in Taylor's prior criminal case was a dismissal based on the failure of the witnesses to appear, the consent determination was not "necessary to the judgment." See, Gates 452 N.W.2d at 630-31 . The consent determination made in the pretrial hearing was not essential to the resulting judgment of dismissal. As the judgment did not depend, in any way, on the result of the motion to suppress hearing, the consent determination has no preclusive effect.

Additionally, Taylor did not have a "full and fair" opportunity to litigate the consent issue in the state criminal court. The Michigan Supreme Court stated that in deciding whether there has been a "full and fair" opportunity to litigate, a court should consult Restatement (Second) of Judgments §§ 28-29. Monat, 677 N.W.2d at 847 n. 2. The United States Supreme Court provides additional guidance:

> Determining whether a [party] has had a full and fair chance to litigate [an issue] in an earlier case is of necessity not a simple matter [because] ... as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, [the] decision will necessarily rest on the trial courts' sense of justice and equity.

Blonder-Tongue Laboratories, Inc v. Univ of Illinois Foundation, 402 U.S. 313, 333-334 (1971)).

As discussed in Monat, the ability of a party to obtain appellate review is critical in the fairness analysis. See, 677 N.W.2d at 847. Taylor's ability of appellate review of the consent issue was, as a practical matter, unavailable. See, RESTATEMENT (SECOND) OF JUDGMENTS § 28(1). The remedies sought in a §1983 action are incompatible with the

goals of a motion to suppress hearing in a state criminal case. See, Id. at § 29(1). Also, this forum affords Taylor more procedural opportunities, most important of which, is the ability to present the consent issue to a jury. See, Id. at § 29(2). Moreover, the Court is concerned that Defendant's proffered use of collateral estoppel is not in compliance with overarching due process concerns.

Defendant cites <u>Gaddis v. Redford Tp</u>., 188 F.Supp.2d 762 (E.D. Mich. 2008) in support of issue preclusion. This case is readily distinguishable. In <u>Gaddis</u>, the court collaterally estopped a § 1983 plaintiff from challenging the existence of probable cause for arrest, because that issue was fully and fairly litigated at the preliminary examination in his criminal case - a case in which Gaddis had a full trial with detailed appellate review, resulting in a judgment notwithstanding the verdict. Gaddis had an opportunity to fully litigate his probable cause issue at the trial and appellate court levels. Thus, the district court, in a one sentence analysis, found it fair to estopp him from relitigating the probable cause issue in a civil action.

### B. A Genuine Issue of Material Fact Exists in Plaintiff's Fourth Amendment § 1983 Claim

Defendant argues Plaintiff impliedly consented to the blood draw pursuant to Michigan's implied consent statute. See, Mich.Comp.Laws 257.625c. While the statute implies consent to a blood draw, that statute expressly provides such consent is revocable. Id. If Taylor revokes consent, a court order is required before Powell administers a blood draw. Id. Plaintiff has shown a genuine issue of material fact about whether he revoked consent to the blood draw.

To make out a claim brought under 42 U.S.C.§ 1983, a plaintiff must show that the defendant, while acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States without due process of law. Neuens v. City of Columbus, 303 F.3d 667, 670 (6th Cir. 2002). To survive summary judgment, Plaintiff must (1) demonstrate a genuine issue of material fact as to the deprivation of a federal right and (2) show that a person acting under color of state law caused the deprivation. Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and [that] no Warrants shall issue, but upon probable cause ...." U.S. Const. Amend. IV. The Supreme Court has stated there is a general requirement that a search warrant be obtained as a means to ensure a search is reasonable. Chimet v. California, 395 U.S. 752, 762 (1969). Warrantless searches are permissible if consent is freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). To determine whether a person freely gave consent, a reviewing court must examine the totality of circumstances. U.S. v. Mendehall, 446 U.S. 544, 557 (1980).

The Michigan Legislature has adopted Fourth Amendment protections in its implied consent statute, Mich.Comp.Laws 257.625c. The statute provides that a person is considered to have consented to chemical tests of his or her blood, breath or urine (a "search" for Fourth Amendment purposes) if arrested for certain violations, such as (applicable here) driving under the influence of alcohol.

Implied consent is withdrawn if the arrested person refuses to take the test. The Michigan Legislature expressed a clear intent to protect the rights of its citizens by requiring

11

that if an arrested person refuses to consent to a voluntary test, a court order must be obtained before the test occurs: "[i]f he or she refuses the request of a peace officer to take a test described in subparagraph (i) (blood, urine, or breath test), a test shall not be given without a court order...." Mich.Comp.Laws. 257.625a(6)(b)(iv).

Here, Defendant admits he was acting under the color of law. (Doc. 6 at ¶ 4). Plaintiff's survival on this motion turns on whether he can show the Court a fact issue with respect to the deprivation of a right secured by the U.S. Constitution. In the context of a § 1983 claim, the Supreme Court has stated the right to be free from an unreasonable search is clearly established. California v. Hodari, 499 U.S 621, 624-25 (1991). Plaintiff's main factual allegation is that he did not consent to the blood draw. A non consensual, warrantless search, absent exigent circumstances (not argued by Defendant) is an unreasonable, and therefore unconstitutional search. Defendant relies solely on the consent exception to the search warrant requirement to justify the blood draw. Thus, the § 1983 claim turns on whether Plaintiff consented to the blood draw.

Except for the initial traffic stop and arrest, the parties disagree on almost all additional facts in the case. Most importantly of which are the facts surrounding whether Plaintiff gave consent for the blood draw or, phrased alternatively, whether he properly revoked the implied consent given under the statute. Plaintiff's factual allegations, along with the fair inferences that follow, show the Court that a reasonable jury could believe that Plaintiff did not consent to the blood draw. The Court notes the following genuine issues of material fact:

    (1)    Plaintiff testified Defendant Powell did not ask him to consent to a chemical blood test for alcohol, nor read him his rights regarding the testing

procedures, nor explain the consequences of a refusal to consent. (Doc. 21 at 3). Defendant testified he did all these things. (Doc. 21 Ex. 3 at 91)

(2) Defendant testified that Plaintiff gave nurse Brown permission to draw his blood. (Doc. 21 Ex. 3 at 89). Plaintiff testified he was not asked to consent to the blood draw. (Doc. 21 at 5, Ex. 2 at 24-26).

(3) Plaintiff denied that he failed to express his refusal to have his blood drawn. (Doc. 21 at 5). Defendant testified Plaintiff did not refuse to take the test. (Doc. 16, Ex. C at 8-9).

Plaintiff has shown there is a genuine issue of material fact about whether Plaintiff consented to the blood draw, or revoked implied consent under the statute. Therefore, the Court denies Defendant's motion for summary judgment on the Fourth Amendment § 1983 claim.

### C. Qualified Immunity

Defendant asserts he is entitled to qualified immunity. Qualified immunity protects state officials sued in their individual capacities from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In resolving the issue of qualified immunity, courts engage in a two-step decisional process: "defendant enjoys qualified immunity on summary judgment unless the facts alleged and evidence produced, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." Jefferson v. Lewis, 594 F.3d 454, 459 (6th Cir.2010) (citing Morrison v. Board of Trustees of Green Tp., 583 F.3d 394, 400 (6th Cir.2008)). The Supreme Court has explained "[t]he judges of the district courts and the courts of appeals should be permitted

to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S.Ct. at 818. The Sixth Circuit has included a third inquiry to "increase the clarity" of the above analysis, a court must additionally determine "whether the plaintiff offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." Jefferson, 594 F.3d at 460 (citing Floyd v. City of Detroit, 518 F.3d 398, 405 (6th Cir. 2008).

"A court should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, 'involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.' " Flint ex rel. Flint v. Kentucky Dept. of Corrections, 270 F.3d 340, 346 (6th Cir.2001) (quoting Poe v. Haydon, 853 F.2d 418, 425-426 (6th Cir.1988)). The plaintiff bears the ultimate burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." Sheets v. Mullins, 287 F.3d 581, 586 (6th Cir.2002).

Based on the language in the implied consent statute, Powell argues that he is entitled to qualified immunity because his decision that Plaintiff consented to the blood draw was objectively reasonable. The pre-trial ruling in Plaintiff's criminal case that there was sufficient evidence that Plaintiff consented to the blood draw supports the argument that Defendant acted reasonably.

Qualified immunity applies as an affirmative defense to an established Constitutional violation. If there is no violation, there is no need to engage in a qualified immunity

analysis. Thus, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Cummings v. City of Akron 418 F.3d 676, 685 (6th Cir. 2005) (citing Hope v. Pelzer, 536 U.S. 730, 736 (2002).

Assuming the truth of Plaintiff's facts, Powell violated his Fourth Amendment rights because he did not consent to the test, or alternatively, revoked implied consent given under the statute. It is axiomatic that Plaintiff's Fourth Amendment rights to be free from an unreasonable search were "clearly established" at the time of the violation. See, Hodari, at 624-25. Given that Plaintiff allegedly did not consent to the search, nor were any other search warrant exceptions available, Defendant's ordering of the blood draw was objectively unreasonable in light of Plaintiff's clearly established Fourth Amendment rights. Therefore, the affirmative defense of qualified immunity is unavailable to Powell.

Furthermore, at this point in the proceedings, the Court cannot grant summary judgment to Defendant based on qualified immunity, because the facts are in dispute. Since there is a genuine issue of material fact regarding Plaintiff's consent, qualified immunity is inappropriate.

**V.   CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendant Powell's motion for summary judgment on the Fourth Amendment § 1983 claim and **GRANTS** Defendant's motion for summary judgment on all other claims.

**IT IS SO ORDERED.**

                                          s/Marianne O. Battani
                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

DATED: October 27, 2010

## CERTIFICATE OF SERVICE

      Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                      <u>s/Bernadette M. Thebolt</u>
                                      Case Manager